Citation Nr: 1554503 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 11-17 285 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Sioux Falls, South Dakota


THE ISSUES

1. Entitlement to service connection for chronic liver disease, to include compensation under 38 U.S.C.A. § 1151 due to VA treatment.

2. Entitlement to service connection for a respiratory disorder, to include chronic obstructive respiratory disease (COPD), to include on a secondary basis.


REPRESENTATION

Veteran represented by: Karl Kazmierczak, Attorney


WITNESS AT HEARING ON APPEAL

Veteran



ATTORNEY FOR THE BOARD

S. Finn, Counsel


INTRODUCTION

The Veteran served on active duty from August 1975 to August 1978 and from April to September 1990.

This appeal to the Board of Veterans' Appeals (Board) is from October 2009, July 2010, March 2011 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO).

In September 2012, a videoconference hearing was held before the undersigned; a transcript of this hearing is in the file.

The issues were remanded in August 2014 for further development.


FINDINGS OF FACT

1. The Veteran does not have an additional disability, including chronic liver disease, cirrhosis, and jaundice, that was proximately caused by any error in judgment, carelessness, negligence, or similar instance of fault on the part of VA, or an event that was not reasonably foreseeable as a result of VA medical treatment.

2. The Veteran does not have chronic liver disease related to service.

3. The Veteran's COPD has been related to cigarette smoking, and the preponderance of the evidence reflects it did not manifest during active service or for many years thereafter, is not caused or aggravated by a service-connected back disability, and is not related to active service.


CONCLUSIONS OF LAW

1. The criteria for compensation benefits for chronic liver disease, cirrhosis, and jaundice are not met. 38 U.S.C.A. § 1151 (West 2002 & Supp. 2015); 38 C.F.R. §§ 3.102, 3.102, 3.159, 3.303, 3.358, 3.361(b), 3.800 (2015).

2. The criteria for service connection for a respiratory disorder/COPD have not been met. 38 U.S.C.A. §§ 1131, 5103, 5103(A), 5107 (West 2015); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2015); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

VA should notify the Veteran of: (1) the evidence that is needed to substantiate the claim(s); (2) the evidence, if any, to be obtained by VA; and (3) the evidence, if any, to be provided by the claimant. Pellegrini v. Principi, 18 Vet. App. 112 (2004); see also Notice and Assistance Requirements and Technical Correction, 73 Fed. Reg. 23,353 (Apr. 30, 2008) (codified at 38 C.F.R. Part 3).

Through letters dated in February 2010, March 2010, May 2010, July 2010, and September 2010, the RO notified the Veteran of the legal criteria governing claims for compensation benefits under 38 U.S.C.A. § 1151 and service connection. These documents served to provide notice of the information and evidence needed to substantiate the claim.

VA's letter notified the Veteran of what evidence he was responsible for obtaining, and what evidence VA would undertake to obtain. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). VA informed him that it would make reasonable efforts to help him get evidence necessary to support his claims, particularly, medical records, if he gave VA enough information about such records so that VA could request them from the person or agency that had them.

The RO also notified the Veteran of the process by which initial disability ratings and effective dates are established. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

Defects as to the timeliness of the statutory and regulatory notice are rendered moot because each of the Veteran's claims on appeal has been fully developed and re-adjudicated by an agency of original jurisdiction after notice was provided. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

There is no indication that any additional action is needed to comply with the duty to assist the Veteran. The claims folder contains copies of all pertinent VA treatment records. The Veteran was sent a development letter in August 2014, which stated in part "Please provide any private medical treatment records not previously submitted in regards to the issues of COPD and chronic liver disease. If you do not have any additional private medical records to submit please respond to this letter right away to avoid delays in action." In September 2014, the Veteran stated that "I have enclosed all the remaining information or evidence that will support my claim, or I have no their information or evidence to give VA to support my claim. Please decide my claim as soon as possible."

The Veteran was also afforded multiple VA examinations in connection with the claims on appeal, reports of which are of record. These opinions are predicated on a review of the history and consideration of the Veteran's complaints and symptoms. The most recent VA examination was dated in October 2014, as well as other examinations in April 2010, and April 2012. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding that a remand by the Board confers upon the Veteran, as a matter of law, the right to compliance with its remand instructions, and imposes upon VA a concomitant duty to ensure compliance with the terms of the remand); see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that only substantial rather than strict compliance with the Board's remand directives is required under Stegall); accord Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the U.S. Court of Appeals for Veterans Claims held that 38 C.F.R. § 3.103(c) (2) requires that the RO Decision Review Officer or VLJ who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issue(s) and (2) the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). During the Board hearing, the undersigned set forth the issues to be discussed at the hearing and sought to identify any pertinent evidence not currently associated with the claims folder that might have been overlooked or was outstanding that might substantiate the claims. In addition, the claims were remanded to ensure that all information and evidence necessary to decide the claims was obtained. Accordingly, any deficiency in the conducting of the hearing is nonprejudicial.

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Chronic Liver Disability 

Generally, service connection may be established for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a) (b). In order to establish service connection, the following must be shown: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Under current provisions of 38 U.S.C.A. § 1151, compensation shall be awarded for a Veteran's qualifying additional disability in the same manner as if such additional disability was service-connected. A qualifying disability is one which is not the result of a Veteran's willful misconduct, and which was caused by hospital care, medical or surgical treatment, or examination furnished to the Veteran under any law administered by VA, and the proximate cause of the disability is carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the hospital care, medical or surgical treatment, or examination; or an event not reasonably foreseeable. 38 U.S.C.A. § 1151(a).

To determine whether a Veteran has an additional disability, VA compares the Veteran's condition immediately before the beginning of the hospital care, medical or surgical treatment, upon which the claim is based to the Veteran's condition after such care or treatment has stopped. 38 C.F.R. § 3.361(b); see also 38 C.F.R. § 3.358(b) (1).

To establish causation, the evidence must show that the hospital care, medical or surgical treatment, resulted in the Veteran's additional disability. 38 C.F.R. § 3.361(c) (1); see also 38 C.F.R. § 3.358(c) (1). The proximate cause of a disability is the action or event that directly caused the disability, as distinguished from a remote contributing cause. To establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing hospital care, medical or surgical treatment, or examination proximately caused a Veteran's additional disability, it must be shown that the hospital care, medical or surgical treatment, or examination caused the Veteran's additional disability (as explained in paragraph (c) of this section); and that VA failed to exercise the degree of care that would be expected of a reasonable health care provider. 38 C.F.R. § 3.361(d) (1).

Whether the proximate cause of a Veteran's additional disability was an event not reasonably foreseeable is in each claim to be determined based on what a reasonable health care provider would have foreseen. 38 C.F.R. § 3.361(d)(2).

The Veteran contends that he incurred an additional disability as a result of negligent VA treatment. Specifically, he asserts that he has a liver disability as a result of taking Vicodin that was prescribed by VA on June 17, 2005 and/or from May 5, 2005 to July 28, 2005. (See December 2009 Written Statement; September 2012 Hearing Transcript). Alternatively, he contends that his liver disease was secondary to or related to his history of infectious mononucleosis from service.

By way of history, the Veteran has significantly abused alcohol. (See June 1993 VA compensation examination noting the Veteran admitted that "he was an alcoholic for several years, and has gone through a treatment program and has had nothing to drink since July of 1991." The Veteran also has an extensive history of taking pain medication for this back pain, including propanolol 20 mg, Naproxen 500 mg, and baclofen 20 mg. He also took pain medication while he was incarcerated. (See August 14, 1996, October 1999, and December 1999 treatment record). In July 2002, the Veteran complained of back pain and was prescribed Vicodin, Flexeril, and Naprosyn.

VA treatment records reflect treatment for and a diagnosis of chronic liver disease/cirrhosis. He had elevated liver enzymes on May 24, 2005 with AST of 86.0 normal to 37 and a history of alcohol abuse and peripheral neuropathy secondary to past alcohol abuse. 

A May 3, 2005 Nursing Intake Note reflects that the Veteran denied any prior treatments for alcohol dependence as reported Alcohol screening with AUDIT-C and assessment of prior treatment. 

On June 1, 2005, the Veteran complained of severe persistent lower back pain. The treatment record noted that "according to the Pt, he has a Hx of chronic low back pain. Pt is new to the Las Vegas area (previously treated at the Palo Alto VA)." During the telephone interview, it was also found that the "Pt was seen last month on 5/5/05 for this same medical problem. Pt states he was given a new Pt appt for July 28, 2005. Pt further states he was not given any medication for the pain."

A June 7, 2005 VA treatment record, in part, reflects that the Veteran had pancytopenia, most likely related to the hematologic effect of his chronic drinking, elevated liver functions, hypothyroidism. A July 12, 2005 VA treatment record reflects he was prescribed 5mg of Oxycodone.

A June 17, 2005 MOFH (Mike O'Callaghan Federal Hospital) emergency room note reflects, that he fell at home while intoxicated. It was noted on the treatment record that the Veteran was "visibly intoxicated" and stated he had whiskey. His blood alcohol level was 433. The Veteran denied taking Aspirin or Acetaminophen. He was given a prescription for Vicodin for pain. He was told to avoid alcohol while on the medication. It was charted "Return PO Vicodin." He was discharged with Oxycodone 5 mg and was to follow-up with his primary care doctor on July 28, 2005.

He was subsequently admitted to the hospital from July 11 to 23, 2005 for alcoholic hepatitis. His work-up showed a fatty liver. He was given plain Oxycodone in the hospital and subsequently discharged. A July 7, 2005 VA treatment record reflects complaints that "he does not do anything about his low back pain other than drink to control the pain." A July 12, 2005 VA treatment record reflects that the Veteran was medicated with Oxycodone 5mg. He was told to avoid alcohol. A July 13, 2005 VA treatment record reflects that the Veteran was prescribed Gabapentin for pain. A July 15, 2005 VA treatment record reflects that Veteran requested pain medication. A July 17, 2005 VA treatment record reflects he was taking Oxycodone for feet pain. (See also July 19, 2005 VA treatment record). On July 21, 2005, the Veteran was diagnosed with weakness, hypokalemia, and jaundice.
 (VA treatment records from June 2005-July 2005; Sioux Falls VA Medical Center, Sioux Falls, SD dated June 7, 2012 to May 19, 2015; uploaded May 29, 2015).

A September 2005 treatment record reflects a diagnosis of alcohol abuse, chronic liver disease, cirrhosis and neuropathy. (See also July 28, 2005 VA treatment record). His medication list reflects that he took Oxycodone 5 mg from July 16, 2005 to July 23, 2005 and from October 5, 2005 to December 4, 2005; Ibuprofen from July 13, 2005 to July 23, 2005, which was discontinued.

A March 2006 MSLA-Las Vegas Bureau of Disability Adjudication reflects, in part, that he was a drinker of beer and hard liquor for several years. He quit in July 2005 when he was hospitalized in July 2005 with jaundice for 12 days. He was told he had the early start of cirrhosis. He has not had any further episodes of jaundice since July and since he quit drinking in July 2005. He was found to be disabled as of July 11, 2005 for a primary diagnosis of visual disturbance and a secondary diagnosis of chronic liver disease. 

A March 2006 treatment records reflects that the physician admonished the Veteran for his continued drinking and taking of pain medication. In an October 2007 VA treatment record, the Veteran claimed sobriety for two years.

The Veteran underwent a VA examination in April 2010. The examiner reviewed the claims file. He concluded that liver disease was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness. His rationale was premised on the following:

"Concerning this: These areas were reviewed; in fact, the records were started on September 30, 2005 and that was at the Southern Nevada HSC and it was noted that he had ETOH abuse from 6-07-05. Diagnosis was severe hyperbilirubinemia with jaundice, elevated AST with alcohol abuse. On 9-02-05 there was an assessment that said alcohol abuse chronic liver disease, cirrhosis and neuropathy. On 7-28-05 it said cirrhosis of the liver and peripheral neuropathy. 7-21-05 all nurses note medication oxycodone was given; no Tylenol was noted and no Vicodin was noted at that time. On 7-20-05 he received Motrin and oxycodone for pain in his feet. 7-19-05 (he was in the hospital during this time) he received oxycodone for pain in his feet. 

The Veteran was informed, noted in the nurses' notes, that he had a stone in his liver after ERCP. The date 7-05 and the ERCP showed a diagnosis of obstructive jaundice and he underwent a sphincterotomy and papillotomy at that time with stenosis of the common bile duct noted. CT scan of the liver showed enlarged liver, fatty type. Ultrasound of the gallbladder was negative for stones at that time. On 7-16-05 Veteran received oxycodone for foot pain. On 7-14 there was no oxycodone given. On 7-13 diagnosis of jaundice with hyperbilirubinernia. 7-12 oxycodone was given. On 7-11-05 diagnosis of probable alcoholic liver disease, stricture of bile duct and jaundice. It was noted that the Veteran said he had a couple drinks on his birthday. He was in apparently into the hospital at that time with complaint and his alcohol level was 433%, which would be like a 4.33 alcohol level. Further going down, he had been discharged from the hospital. We did not find any treatment that was noted during the hospitalization. The diagnosis dictated by Dr. Salem on 7-22-05 indicated probable alcoholic liver disease with alcoholic hepatitis, probable Alcohol Dependence, peripheral neuropathy and general disability secondary to problem 3, microcytic anemia probable secondary to problem #2 and metabolic abnormalities during this admission treated. He had a CT scan of the head and ultrasound of the right upper quadrant as noted above. Computer tomography abdomen is noted above for the liver. @@@ Cholangiopancreatography done and endoscopy retrograde cholangiopancreatography. The discharge said that Vicodin was ordered for pain at his discharge. There were noted alcohol levels as noted above. The finding was chronic liver disease and cirrhosis. The provider that put that in was Subitha Jputhoor. He had lab results showing an AST; these were basically on 12-06, which was 24, 37 and 86. May 24, 2005 was when it was treated and elevated at that time. It decreased to 37 by 8-02-06 and 12- 21-06 was at 24. His total Bili was initially 2.4 on 5-24-05, decreased to 0.7 on 8-02 and 0.8 on 12-06. His gamma glutamyltranspeptidase was noted at 51 and then down to 7, also noted in the above records. His ALT was 13 on 5-24-05 and then 47 and then down to 28. Instructions were given and he was given hydrocodone/APAP 500 mg. noted on 17 June of 2005 and that had to do with a (the paperwork is somewhat confusing), but there was a laceration to the hand, where that was prescribed for him. Subsequent problems relating to this indicate various records indicating apparently some medical legal problems as noted. His incision on September of 2003 was when he had the laceration of left lateral surface of the second digit of his right hand. Those were the next records noted.

In reviewing these records, it was obvious that during the timeframe that was listed, the Veteran did not receive any Vicodin at that time. what he did receive though was oxycodone, which is a part of a Vicodin. Vicodin concern is with the Tylenol and excessive doses of Tylenol can cause liver problems. Oxycodone has not been found to cause liver problems and in "Up To Date" there were no findings for continued liver problems noted with oxycodone. He may have been discharged with Vicodin, but the records are a little vague concerning that, but his treatment period noted May 5th to July 8, 2005 basically did not show any Vicodin usage, just the oxycodone noted per the nurses' notes and medical records provided. Therefore, it is the opinion of this examiner that there is no finding for liver damage related to his oxycodone at this time. Based upon the findings that the oxycodone noted in the "Up To Date" does not cause liver damage. He has had problems with alcohol abuse noted in the past was noted to have alcoholic liver disease. It is, therefore, the opinion that the VA noted and treated the Veteran appropriately for his current problems that he had at that time. He was noted to be jaundiced, he had a stenosis in the hepatic duct. He underwent ERCP without difficulty. He improved and, therefore, there were no findings for carelessness, negligence, lack of proper skill, error in judgment or similar instances of noted on the VA at this time for this treatment time. The opinion is noted as above.

An April 2012 VA examination reflects that liver disease was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness. The examiner's rationale was premised on the fact that liver disease, neurological issues, and heat intolerance were clearly and unmistakably not secondary to or related to history of infectious mononucleosis occurring in March 1976. He stated that review of the medical record revealed unremarkable liver function tests except for those occurring during convalescence of infectious mononucleosis; and an episode noted 2005 where liver enzymes were significantly elevated when he was treated in Nevada. He was diagnosed with alcohol intoxication with an alcohol level of .433 at that time. He stated that were no residual effects and chronic problems associated with infection mononucleosis, which was supported by credible medical literature he reviewed in Up To Date, Mayo Clinic, and AAFP. His medical records do not suggest regular follow-up for chronic liver disease or consultation with gastroenterologist except during the acute intoxication treatment in 2005 with liver function tests subsequently returning to normal. The examiner further stated that the Veteran had no documentation of serious complications from an isolated episode of syncope or presumed heat exhaustion and dehydration which may include: seizure, rabdomylosis or organ failure; none of these have occurred with his episode of dehydration and presumptive heat exhaustion occurring September 1990. He stated that a CT (computer tomography) of the abdomen noted diffusely enlarged liver, most likely seen in fatty liver. MRCP (magnetic resonance cholangiopancreatography) suggested stricture in the upper portions of the common hepatic duct. An ERCP (endoscopic retrograde cholangiopancreatography) demonstrated sludge in the common bile duct and a sphincterotomy was performed. Gastroenterologist felt that the Veteran most likely had a diagnosis of alcoholic liver disease and that the sphincterotomy would not help.

The Veteran underwent a VA compensation examination in October 2014. The examiner clarified that the Vicodin was Hydrocodone with Acetaminophen (Tylenol) which was prescribed in a small dose on June 17, 2005 for back pain. Oxycodone does not contain Acetaminophen which was prescribed while the Veteran was hospitalized. Percocet (also known as Roxicet Tylox, or Oxycet) was Oxycodone with Acetaminophen and was not prescribed. He further stated that the Veteran's treatment records reflect an elevated liver function tests prior to June 17, 2005. He was treated for fall at home and was visibly intoxicated with a blood alcohol level of 433 on June 17, 2005. He denied taking Aspirin or Acetaminophen. The concern about the use of Vicodin was that it contained Acetaminophen and Acetaminophen's possible toxic effects on liver function in higher doses. It has already been established that Hydrocodone and Oxycodone alone do not cause liver damage. He was given a prescription for Vicodin and instructed to avoid using alcohol with the medication. On July 11, 2005, he was admitted with a diagnosis of alcoholic hepatitis. He had a fatty liver. He was prescribed Oxycodone. The VA examiner stated that it was very unlikely that the use of a very restricted and limited prescription of Vicodin led to the Veteran's hospitalization for liver failure July 11, 2005, and it was very unlikely that the limited prescription of Vicodin led to his present liver disability. The examiner opined that there was no evidence that the VA demonstrated carelessness, negligence, lack of proper skill, error in judgment or similar instance of fault, treatment or lack of treatment in the prescription of Vicodin in June 2005, particularly in light of his intoxication and alcohol level noted June 17, 2005. 

The VA examiner further stated that the Veteran's had definite improvement of his liver condition with normal liver enzymes since at least 2009 when he stopped his consumption of alcohol. It was noted that he discussed this case with other Internal Medicine colleagues and that Vicodin was one of the safer analgesics that could have been prescribed in June 2005 for back pain following the Veteran's fall. The examiner concluded that the preponderance of the evidence does not establish that the chronic liver disease, including cirrhosis, was a result of his medical care. And that, the medical care would not be considered carelessness, negligent, lacking proper skill, error in judgment, or similar instance of fault in his treatment/prescriptions from 2005. 

In support, the examiner cited to a report from Am J Ther 2005 Mar-Apr 12(2);133-41, which states that Acetaminophen has been used safely and effectively for many years to manage pain and/or fever in patients of all ages. It was commonly recommended as first line therapy for a variety of patients and conditions, including the elderly. It was used often avoided in patients with chronic liver disease. The perception that Acetaminophen should be avoided in such patients arose from awareness of the association between massive Acetaminophen overdose and hepatotoxicity, combined with a lack of understanding of the metabolism of Acetaminophen inpatients with liver disease. There are various theoretical mechanisms of acetaminophen hepatotoxicity in chronic liver disease including altered metabolism and depleted glutathione stores that would be expected to increase accumulation of the hepatotoxic intermediate N-acetyl p benzoquinone imine or NAPQI. Available studies in patients with chronic liver disease, however, have shown that although the half-life of acetaminophen may be prolonged, cytochrome P-450 activity was not increased and glutathione stores were not depleted to critical levels in those taking recommended doses. Furthermore, Acetaminophen has been studied in a variety of liver diseases without evidence of increased risk of hepatotoxicity at currently recommended doses. Therefore, Acetaminophen could be used safely in patients with liver disease and was a preferred analgesic/antipyretic because of the absence of the platelet impairment, gastrointestinal toxicity, and nephrotoxicity associated with nonsteroidal antiinflammatory drugs.

The VA examiner further cited to "Up to Date," which stated that most of the Hydrocodone (Vicodin) products contained Acetaminophen. Acetaminophen has been associated with cases of acute liver failure. However, most of the cases of liver injury were associated with the use of Acetaminophen at doses that exceed 4000 mgs per day. The onset of liver failure was not a reasonably foreseeable result of the use of small and restricted amounts of Vicodin. 

When assessing the probative value of a medical opinion, the thoroughness and detail of the opinion must be considered. The opinion is considered probative if it is definitive and supported by detailed rationale. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). A medical opinion that contains only data and conclusions is not entitled to any weight. "It is the factually accurate, fully articulated, sound reasoning for the conclusion, not the mere fact that the claims file was reviewed, that contributes probative value to a medical opinion." See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008).

Here, the VA examiners reviewed the claims file. There are no findings of negligence or carelessness, or lack of proper skills or judgment in the medical treatment provided the Veteran. The Veteran or his attorney has not submitted any medical opinion to the contrary. The Board finds the VA examiners' opinions are fully articulated, particularly the most recent October 2104 VA opinion, and contain sound reasoning; and they are afforded significant probative value. The October 2014 VA medical opinion is afforded the most probative value because it more directly answered the Board's August 2014 remand questions.

The VA medical opinions are consistent with the treatment records. His medical records reflect elevated liver function tests prior to being prescribed Vicodin on June 17, 2005. He was told to avoid drinking alcohol with this medication. Yet, he admitted to drinking at least one alcoholic beverage while on the medication. (December 2009 Written Statement). Further, he has had a long history of alcohol abuse.

Neither the Veteran nor his attorney presented or alluded to the existence of any medical opinion (i.e., one that would support the Veteran's assertions as to whether VA failed to exercise the degree of care that would be expected of a reasonable health care provider), despite specifically being asked or invited to present or identify such evidence in the August 2014 letter and August 2014 Board remand.

During his hearing, the Veteran testified that he was diagnosed with liver disease in 2005. He stated that the cause was unknown in that it could have been from alcohol intake or Extra Strength Tylenol. (See Hearing Transcript p. 9). He also submitted lay statements from his brother and wife. (See Written Statements from J.F. and V.F.). The Board recognizes that the Veteran is competent to report first-hand experiences of liver problems. However, he (or his brother or wife) as a lay person, is not shown to have the medical expertise to offer an opinion as to the underlying etiology of any current claimed liver disease, to include the extent to which any action or treatment by VA health care providers contributed to his medical problems. Therefore, the Board ultimately places far more weight on the medical opinions, particularly the October 2014 opinion, discussed above, which considered the nature and circumstances of his medical treatment at a VA facility, but concluded carelessness, negligent, lacking proper skill, error in judgment, or similar instance of fault in his treatment/prescriptions from 2005. 

In short, the most competent and probative evidence weighs against a finding of any additional disability related to improper care or an unforeseen event related to VA medical treatment beginning in June 2005. 

Further, the most competent and probative evidence weighs against finding liver disease was incurred in or caused by the claimed in-service injury, event, or illness. The April 2012 examiner's rationale was premised on the fact that liver disease was clearly and unmistakably not secondary to or related to history of infectious mononucleosis occurring in March 1976. He stated that review of the medical record revealed unremarkable liver function tests except for those occurring during convalescence of infectious mononucleosis; and an episode noted 2005 where liver enzymes were significantly elevated when he was treated in Nevada. He was diagnosed with alcohol intoxication with an alcohol level of .433 at that time. He stated that were no residual effects and chronic problems associated with infection mononucleosis, which was supported by credible medical literature he reviewed in Up To Date, Mayo Clinic, and AAFP. His medical records do not suggest regular follow-up for chronic liver disease or consultation with gastroenterologist except during the acute intoxication treatment in 2005 with liver function tests subsequently returning to normal.

Accordingly, the Veteran's claim is denied.

Respiratory Disorder 

The Veteran asserts he is entitled to service connection for COPD, to include on a secondary basis. Specifically, he and his attorney claim a tertiary argument in that COPD was proximately caused by his obesity, which was caused by his service-connected lumbar condition. (See September 2012 Written Statement citing to evaluation report dated May 22, 2011and letter dated January 21, 2011 from Dr. Small; and Physical Examination report dated May 22. 2011).

Generally, service connection may be established for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a) (b). In order to establish service connection, the following must be shown: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Service connection can also be established on a secondary basis which requires evidence sufficient to show that a current disability exists and that the current disability was either proximately caused by or proximately aggravated by a service-connected disability. 38 C.F.R. § 3.310(b); Allen v. Brown, 7 Vet. App. 439, 448 (1995).

The STRs do not reflect treatment for or diagnosis of a respiratory disorder. 

The VA treatment records show a diagnosis of COPD with an asthmatic component and chronic bronchitis. The Veteran was diagnosed with COPD in 2010. (See March 2010, April 2010, and August 2010 VA treatment records). He has a significant history of smoking since 1975 (one to two packs per day) until he quit in 2010. However, recent medical notes report smoking again with one to two cigarettes per day and/or vapor smoking.

In December 2012, the Veteran was treated at Avera St. Luke's Hospital for breathing problems/respiratory failure. He was on oxygen and nebulizer treatments and recently had an increase in shortness of breath. He was steroid dependent for treatment. He had been seen by his primary care a couple of days prior and started on steroids and antibiotics, but he continued to worsen so he presented to the emergency room. The Veteran was diagnosed with acute chronic hypercapnic respiratory failure and hypoxia secondary to COPD exacerbation and morbid obesity with obstructive sleep apnea/OHS. It was opined that his severe COPD was a greater issue than his obstructive sleep apnea and that it was causing the respiratory failure and not the obstructive sleep apnea. 

The Veteran underwent a VA examination in October 2014. The examiner opined that it was less likely than not that the respiratory disability/ COPD was proximately due to or the result of the service-connected back disability. The examiner based his opinion on the predominant pathologic changes of COPD found in the airways and not the muscles or vertebrae of the lower back. The examiner noted that he had lumbar DDD, which does not involve the airways or expansion of the chest. The most important risk factor for COPD was cigarette smoking and the amount and duration of smoking contribute to disease severity. The Veteran had a significant history of cigarette smoking and a very significant likelihood that his smoking caused his COPD. His rational was premised on the following: 1) he had a back condition since 1990, and wasn't diagnosed with COPD until 2010. There were numerous treatment reports for low back pain from 1990 until 2010 that have not been associated with any COPD complaints. 2) A September 30, 2005 note reflects that he was able to be active as a manager of a large grocery store, where he frequently lifted 50 pound boxes until six months prior. 3) A July 23, 2005 note reflects resting O2 saturation of 99 percent and no evidence of lung disease.

He also concluded it was less likely than not that his obesity was proximately due to or the result of his service-connected back disability. His rationale for this conclusion was premised on the general medical treatment goal for patients with back pain to maintain or lose weight. And that, changes in food supply, including the availability of cheap, palatable, convenient, energy dense foods was primarily responsible for the rising prevalence of obesity. He further stated that the medical record did not discuss the Veteran's nutrition habits, but did mention a diet high in fat and sugar causes obesity. There were also multiple other causes of obesity in adults, including genetic factors, psychological factors, binge eating, night eating disorders, increased frequency of eating, etc. He stated that excess intake of calories from any source associated with a sedentary lifestyle causes weight gain and obesity as well as genetic factors. The examiner further stated that the presence of low back pain does not affect the use of the arms or prohibits use of upper body activities. And that, to state that the Veteran became obese just because he had low back pain implies that back pain alone causes obesity, and the patient was powerless to control his activity or diet which generally is not the case. 

The October 2014 VA examiner's opinion is consistent with the treatment records. For example, a March 31, 2008 VA treatment record reflects that he did not keep his diet appointments and that his weight had increased to 272 lbs. with a BMI of 39. An August 2008 VA treatment record reflects that he did not exercise, albeit, a December 1999 record noted that he walked for an hour and that his mother died from COPD at age 67. A July 2005 VA treatment record noted "[h]e does not eat a nutritious meal, but he complains that his part of the reason is because his wife works and he eats only sandwiches, has loss of appetite, has increased problem." A November 2006 VA treatment record noted weight gain of 35 lbs. in one year with 13 lbs. gained during the past two months. He was offered a dietician referral.

The Veteran has not argued that he is entitled to direct service connection and the record does not support a finding of any in-service disease or injury that is etiologically related to his current COPD. Direct service connection (including based on presumptions or as a chronic disease) is not warranted on the evidence of record. The Veteran's theory is that his COPD was proximately caused by his obesity, which was caused by his service-connected lumbar condition. Importantly, the medical evidence establishes that the Veteran's COPD is more likely caused by his tobacco use. 

With respect to tobacco-related service connection claims, there is no basis for service connection and the claim must be denied as a matter of law. See 38 U.S.C.A. § 1103; 38 C.F.R. § 3.300 (2015); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (where the law and not the evidence is dispositive, the claim must be terminated or denied as without legal merit).

The controlling statutes and regulations do not, however, preclude the establishment of service connection based upon a finding that a disease or injury (even if tobacco-related) became manifest or was aggravated during active service or became manifest to the requisite degree of disability during any applicable presumptive period specified in 38 U.S.C.A. §§ 1112 , 1116. See 38 U.S.C.A. § 1103(b); 38 C.F.R. § 3.300. The Veteran has not claimed and the evidence does not support any finding that his COPD became manifest during or within any applicable presumptive period after his discharge. In fact, he was diagnosed in 2010-decades after service with a history of smoking since 1975 (one to two packs per day) until he quit in 2010. Service connection on this basis, then, is not warranted.

The service connected back disability has not caused the Veteran to increase his use of tobacco products after service, so his COPD cannot be due to his service connected disability. The Board finds based on the available medical evidence, the argument's asserted, the Veteran's claim of entitlement to service connection for a respiratory disability/COPD as secondary to his back disability must be denied. 


ORDER

Entitlement to service connection for chronic liver disease, cirrhosis, and jaundice, to include compensation under 38 U.S.C.A. § 1151 due to VA treatment is denied.

Service connection for a respiratory disorder, to include COPD is denied.




______________________________________________
KELLI A. KORDICH
Acting Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs